# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| SUNNY MARIE C., | Case No.: 1:24-cv-00299-BLW-REP |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Pending is Plaintiff Sunny Marie C.'s Complaint for Review of a Social Security Disability or Supplemental Security Income Decision (Dkt. 1), appealing the Social Security Administration's ("SSA") denial of her disability claim. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Report and Recommendation.

## I. ADMINISTRATIVE PROCEEDINGS

On August 23, 2021, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning April 28, 2019. The claim was originally denied on January 13, 2022, and again on reconsideration on August 16, 2022. On October 12, 2022, Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On October 17, 2023, ALJ John Loughlin held a telephone hearing, at which time Plaintiff, appearing with her attorney Kelly Stephen Jennings, testified. James Breen, an impartial vocational expert, also appeared and testified at the same hearing.

**REPORT AND RECOMMENDATION - 1**

On November 7, 2023, the ALJ issued a decision denying Plaintiff's claim, finding that she was not disabled within the meaning of the Social Security Act. Plaintiff timely requested review from the Appeals Council. On May 6, 2024, the Appeals Council denied Plaintiff's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Plaintiff now represents herself and, having exhausted her administrative remedies, brings this case. She contends that the ALJ's decision is not supported by the requisite substantial evidence. She specifically raises the following six "assignments of error": (i) the ALJ made conflicting findings of fact regarding Plaintiff's ability to perform other work in the national economy, notwithstanding the fact that she could no longer perform her past relevant work; (ii) the occupations that the ALJ determined Plaintiff could perform require further testimony by a vocational expert in light of recent SSA directives; (iii) the ALJ failed to include Plaintiff's need for a cane in her residual functional capacity assessment ("RFC"); (iv) Plaintiff's RFC did not include limitations associated with Plaintiff's severe mental impairments; (v) Plaintiff's RFC did not include Plaintiff's chronic and debilitating pain related to her physical limitations; and (vi) the RFC was vague and confusing and subject to multiple interpretations. Pl.'s Brief at 3-10 (Dkt. 13). Plaintiff requests that the Court reverse the ALJ's decision and find that she is entitled to benefits. *Id*. at 10.

## II.  <u>STANDARD OF REVIEW</u>

The Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664

(9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). If there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015). Considerable weight is

given to the ALJ's construction of the Social Security Act.  *See Vernoff v. Astrue*, 568

F.3d 1102, 1105 (9th Cir. 2009).  However, this Court "will not rubber-stamp an

administrative decision that is inconsistent with the statutory mandate or that frustrates

the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094

(9th Cir. 1987).

## III.  <u>REPORT</u>

### A.    **Sequential Process**

The ALJ must follow a sequential process in determining whether a person is

disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20

C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in

substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

SGA is work activity that is both substantial and gainful.  20 C.F.R. §§ 404.1572,

416.972.  "Substantial work activity" is work activity that involves doing significant

physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work

activity" is work that is usually done for pay or profit, whether or not a profit is realized.

20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability

benefits are denied regardless of her medical condition, age, education, and work

experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant has not engaged in

SGA, the analysis proceeds to the second step.  Here, based upon the medical record and

hearing testimony, the ALJ found that Plaintiff had not engaged in SGA since April 28,

2019, the alleged onset date.  AR 18.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: "cervical spine degenerative disc disease/spondylosis, lumbar spine degenerative disc disease/spondylosis/dextroscoliosis, migraines, major depressive disorder, and posttraumatic stress disorder (PTSD)." AR 18-20.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ concluded

that Petitioner's above-listed medically determinable impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments.  AR 20-24.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's RFC is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established.  Here, the ALJ concluded:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently stoop, crouch, or crawl, can frequently climb stairs or ramps, can occasionally climb ladders, ropes, or scaffolds, and can occasionally be exposed to vibrations, unprotected heights or moving machinery parts.  The claimant requires a moderate noise work environment, as defined in the DOT and SCO.  Also assume that the claimant is able to understand and remember simple instructions, make simple work-related decisions, carry-out simple instructions, and cannot perform work which requires a specific production rate, such as assembly line work or hourly quota work.  She can occasionally deal with changes in a routine work setting and can occasionally interact with supervisors, coworkers, and/or the general public.

AR 24.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national

economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).  If the claimant can do such other work, she is not disabled; if the claimant cannot do other work and meets the duration requirement, she is disabled.  Here, the ALJ found that Plaintiff was unable to perform past relevant work as a mortgage loan officer and a composite job including office manager and auto service manager; even so, the ALJ found that Plaintiff was still capable of working full-time in the following occupations: office helper, mail clerk, and routing clerk.  AR 30-31.  Based on these findings, the ALJ concluded that Plaintiff was not under a disability at any time from April 28, 2019, the alleged onset date.  AR 32.

**B.    Analysis**

Plaintiff identifies six "assignments of error" allegedly proving that the ALJ's decision is not supported by the requisite substantial evidence.  Each of these arguments is addressed below.[1]

1.    Assignment of Error No. 1: The ALJ's Determination at Step 5 of the Sequential Process Was Proper

At Step 4 of the sequential process, the ALJ determined that Plaintiff had the RFC to perform light work, with certain limitations.  AR 24.  Later, at Step 5, the ALJ

---

[1] Plaintiff initially complains that her telephonic hearing took place with an ALJ located and based in Baltimore, Maryland – not Boise, Idaho – and that this constitutes a due process violation.  Pet.'s Brief at 2 n.2 (Dkt. 13).  There is no prohibition against assigning an out-of-state ALJ to hear a case, particularly where administrative disability determinations are driven by statutes and regulations applicable across the country.  *See Subia v. Comm'r of Soc. Sec.*, 264 F.3d 899, 902-03 (9th Cir. 2001).  Moreover, Plaintiff agreed to a telephonic hearing before an out-of-state ALJ and was given a meaningful opportunity to attend and be heard.  AR 162 (Plaintiff's attorney signing an "Acknowledgement of Receipt (Notice of Hearing)," indicating that the hearing would be held telephonically and by ALJ Loughlin at the Baltimore Hearing Office).  Thus, as a threshold matter, there was no due process violation.

**REPORT AND RECOMMENDATION - 7**

determined that this RFC precluded Plaintiff from performing her past relevant work as a mortgage loan officer and office manager (a composite job including office manager and auto services manager). AR 30. Relevant here, the Dictionary of Occupational Titles ("DOT") identifies (i) a mortgage loan officer as work that is generally performed as skilled work at the sedentary level of exertion; (ii) an office manager as work that is generally performed as skilled work at the sedentary level of exertion; and (iii) an auto services manager as work that is generally performed as skilled work at the light level of exertion. *Id*. Plaintiff argues that these findings are inconsistent: if she can longer perform her past relevant work comprised of sedentary and light duty jobs, how does she have the RFC to still perform light duty work?

> The Court must be scratching its head in bewilderment how the ALJ could determine at Step 5 …, Plaintiff could perform three (3) "other **light** duty jobs: (i) office helper; (ii) mail clerk; and dd(iii) routing clerk, when the ALJ had just determined … Plaintiff was unable to perform *any* of her [past relevant work]: (i) <u>Mortgage Loan Officer</u>, **sedentary; (ii)** <u>Office Manager</u>, **sedentary;** and (iii) Auto Services Manager; **light**.

Pl.'s Brief at 4 (Dkt. 13) (emphasis in original; internal citations omitted); *see also* Pl.'s Compl. at 3 ("It is legally inconsistent when the ALJ finds the Plaintiff cannot perform her previous SEDENTARY jobs but can in turn at Step 5 of the sequential evaluation perform LIGHT duty "production" type jobs ….") (emphasis added).

Defendant counters that Plaintiff ignores how the vocational expert, and in turn the ALJ, actually described Plaintiff's past relevant work. Def.'s Brief at 4 (Dkt. 15). That is, while the DOT may identify how the occupations that make up Plaintiff's past relevant work are *generally* performed, the vocational expert testified that Plaintiff's work as a

mortgage loan officer was *actually* performed as medium work, and that Plaintiff's work as an office manager and auto services manager was *actually* performed as heavy work. *Id*. (citing AR 30, 59-60). Additionally, each of these occupations are generally performed as skilled – not simple – positions. *Id*. These distinctions are critical, insists Defendant, and align with the ALJ's RFC assessment. *Id*. The undersigned agrees.

Plaintiff does not dispute that she is unable to perform her past relevant work. Except her past relevant work was actually performed as medium and heavy work. *Supra*. Plaintiff's RFC therefore precludes this same work – at least to the extent it was actually performed. And because Plaintiff's RFC also limits her to simple work, she can no longer perform her past relevant work as it is generally performed. This context explains why Plaintiff can no longer perform her past relevant work (as either actually or generally performed), but nonetheless has the RFC to perform *other* light, yet unskilled work that exists in the national economy. When presented with a hypothetical analogous to Plaintiff's RFC, the vocational expert confirmed as much while identifying jobs that meet that criteria. AR 60-62. These findings are therefore not inconsistent.

Remand is not recommended on this issue.

2. <u>Assignment of Error No. 2: Recent SSA Directives Do Not Characterize the Occupations Identified as Consistent With Plaintiff's RFC as Obsolete; Nor Do They Require Further Testimony by a Vocational Expert</u>

At Step 5 of the sequential process, the ALJ identified three jobs that exist in significant numbers in the national economy that Plaintiff can perform: office helper, mail clerk, and routing clerk. AR 31. Plaintiff contends that each of these jobs are obsolete and, consistent with recent SSA directives (Emergency Message 24026 ("EM

24026") and Emergency Message 24027 ("EM 24027")), the ALJ's decision must be vacated or remanded for further testimony by a vocational expert.  Pl.'s Brief at 4-5 (Dkt. 13).  Defendant responds that Plaintiff's argument is without merit because EM 24026 and EM 24027 do not address any of the at-issue occupations identified by the ALJ at Step 5.  The undersigned agrees with Defendant.

EM 24026 identifies 114 positions within the DOT that were found to be "isolated" – "exist[ing] only in very limited numbers in relatively few locations outside of the region where [the claimant lives]" – and explained that adjudicators may not support a "not disabled" finding by citing to any of those identified occupations.  Soc. Sec. Admin., EM-24026, *Isolated Occupations We Will Not Use to Support a "Not Disabled" Finding at Step Five of the Sequential Evaluation Process*[2] (quoting 20 C.F.R. § 1566(b)).  In EM 24027, the SSA additionally identified thirteen positions that cannot support a finding of "not disabled" at Step 5 without additional evidence from the vocational expert "supporting the adjudicator's conclusion that, as the occupation is currently performed: [(i)] its requirements are consistent with the individual's RFC; and [(ii)] it exists in the national economy in numbers that alone, or in combination with work in other cited occupations, are significant."  Soc. Sec. Admin., EM-24027 REV, *Guidance Regarding the Citation of Certain Occupations at Step Five of the Sequential Evaluation Process*.[3]

---

[2]  *Available at* https://secure.ssa.gov/apps10/reference.nsf/links/06212024021759PM (last visited Aug. 8, 2025).

[3]  *Available at* https://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM (last visited Aug. 8, 2025).

**REPORT AND RECOMMENDATION - 10**

Here, the vocational expert testified about three occupations existing in significant numbers in the national economy that Plaintiff could perform in light of her RFC: office helper, mail clerk, and routing clerk. AR 61. None of these occupations are removed as "isolated" positions under EM 24026. Likewise, none of these occupations are included on the list of positions requiring the vocational expert to present additional evidence to support a not-disabled finding under EM 24027. In determining that Plaintiff was not disabled at Step 5, the ALJ relied on the vocational expert's testimony that she could perform the positions identified in the DOT, as the ALJ was permitted to do under Ninth Circuit precedent. *See Guitierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016) (noting, in context of Step 5, "ALJ may rely on an impartial vocational expert to provide testimony about jobs [a claimant] can perform despite his or her limitations"). Such testimony serves as substantial evidence supporting the ALJ's determination at Step 5. *See Ford v. Saul*, 950 F.3d 1141, 1159 (9th Cir. 2020) (stating that "where the [vocational expert] is qualified and presents cogent testimony that does not conflict with other evidence in the record, the expert's testimony" is substantial evidence to support the ALJ's step-five finding) (citation and quotation marks omitted).

Remand is not recommended on this issue.

3.    <u>Assignment of Error Nos. 3 and 5: The ALJ Properly Assessed Plaintiff's Need for a Cane When Crafting Plaintiff's RFC and Related Physical Limitations</u>

When considering Plaintiff's RFC, the ALJ acknowledged that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that Plaintiff's statements about the intensity, persistence, and limiting

effects of those symptoms are inconsistent with the medical evidence. AR 25 (ALJ stating that "the record supports limitations but not to the degree alleged"). Plaintiff challenges this conclusion and resultant RFC. Specifically, she questions why the ALJ did not include any limitations within her RFC relating to her alleged need for a cane, when the vocational expert testified – in response to a hypothetical from the ALJ – that Plaintiff's alleged need for a cane, combined with other limitations, would preclude gainful employment. Pl.'s Brief at 7, 9 (Dkt. 13) (combining Assignment of Errors Nos. 3 and 5, Plaintiff arguing that the ALJ failed to include her alleged need for a cane because the ALJ "failed to consider [her] chronic and debilitating pain along with obvious physical limitations flowing from her severe impairments"). The record, however, does not support this argument.

To begin, a claimant's RFC is the most she can do despite her limitations. *Supra* (citing 20 C.F.R. §§ 404.1545, 416.945). An ALJ considers all relevant evidence in the record when making this determination. *Id.* It is "proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). In the same way, an ALJ is not bound to accept as true the restrictions set forth in a hypothetical if they are not supported by substantial evidence. *Id.* at 1164. In short, "[a]n ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Id.* at 1164-65.

Here, Plaintiff's argument is anchored to her claimed need for a cane and how the vocational expert confirmed that such a need would mean that "[t]here would be no full-

time competitive employment available." *Supra* (citing AR 62).  But the ALJ did not accept this limitation because the cane was prescribed by Dr. Ye-Liew and the ALJ ultimately found Dr. Ye-Liew's opinions to be unpersuasive.  AR 26, 30.  The ALJ committed no error in arriving at this conclusion.

### a.     The Standard for Evaluating Medical Opinions

Because this case was filed after March 27, 2017, the revised regulations governing the evaluation of medical evidence apply.  *See* 20 C.F.R. § 404.1520c.  Under these regulations, the ALJ is no longer required to give deference to any medical opinion, including treating source opinions.  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022); *see also* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").

Instead, the ALJ evaluates the "persuasiveness" of the opinions based on several factors.  *Id.*  These are: (i) supportability, (ii) consistency, (iii) relationship with the claimant, (iv) specialization, and (v) any "other factors that tend to support or contradict a medical opinion." 2 0 C.F.R. §§ 416.920c(c)(1)-(5).  The ALJ's duty to articulate a rationale for each factor varies.  20 C.F.R. §§ 404.1520c(a)-(b).

Supportability and consistency are the most important factors, and the ALJ, therefore, must explain how both factors were considered.  *Woods*, 32 F.4th at 792; 20 C.F.R. § 416.920c(b)(2).  The supportability factor looks inward at a medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ..., the more

**REPORT AND RECOMMENDATION - 13**

persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). The consistency factor, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion ... will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ is only required to articulate findings on the remaining factors (treatment relationship, specialization, and any other factors) where "two or more medical opinions ... about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same." 20 C.F.R. §§ 404.1520c(b)(2)-(3).

Courts review the ALJ's persuasiveness determinations under these regulations using the substantial evidence standard. To be upheld, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

> b.    *Dr. Ye-Liew*

In October 2022, Dr. Ye-Liew prescribed Plaintiff a cane. AR 673, 775. The use of an assistive device like a cane, however, is probative of a claimant's functional limitations only where it is medically required. *See* SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." *Id*. The ALJ found that Plaintiff's alleged need for

cane does not meet this standard.  AR 26-27 ("Although Dr. Ye-Liew has prescribed the claimant a cane and has recommended that she use the cane, Dr. Ye-Liew has not supported the medical necessity of the claimant with any objective physical findings over a period of time, instead relying on the claimant's subjective complaint.").  The ALJ therefore did not incorporate any such related limitation in Plaintiff's RFC.  Plaintiff contends that the ALJ's justification for disregarding Dr. Ye-Liew's opinions about Plaintiff's need for a cane and resultant prescription is insufficient and thus unsupported by substantial evidence.  Pl.'s Brief at 7, 9 (Dkt. 13) ("Clearly the claimant's documented need for an assistive device (cane) would prevent her from **frequently** stooping, crouching, crawling, climbing stairs, or ramps, OR **occasionally** climbing ladders, ropes, or scaffolds.") (emphasis in original).  The undersigned disagrees.

First, as to supportability, the ALJ initially criticized Dr. Ye-Liew opinions insofar as they appeared to rely upon Plaintiff's self-reports, not any objective medical criteria. The ALJ began by stating:

> In determining whether the use of a cane is medically necessary or needed otherwise, I considered whether the physical examinations included a detailed description of the rheumatological, orthopedic, neurological, and other findings appropriate to the alleged use and limitation.  I only considered physical findings based on objective observation during the examination and not simply a report of the individual's allegation, e.g., She reported "imbalance and weakness in her legs."  Any abnormal physical findings that might support the continued use of a cane must be more than intermittent, established by a record of ongoing management and evaluation.

AR 27.  In other words, neither a claimant's self-reports about their need for a cane, nor the mere fact of a claimant's use of a cane, are enough to establish medical necessity. *See Flores v. Colvin*, 2016 WL 2743228, at *14 (E.D. Cal. 2016) (finding "no medical

documentation establishing the need for an assistive device" when all references to claimant's use of a cane were "traceable to Plaintiff's self-reports and to his medical sources' observations that he presented with an assistive device").  According to the ALJ, this was the problem with Dr. Ye-Liew's opinions: at bottom, they were not internally supported.  AR 27 ("Treatment notes from after October 2022 are primarily provided by Dr. Ye-Liew.  These treatment notes do not support the level of limitation alleged or the use of the cane.").

The ALJ first noted how, in October 2022, Plaintiff's subjective need for a cane coincided with Dr. Ye-Liew prescribing Plaintiff a cane.  AR 27 (citing AR 703, 775).  But there was no actual assessment of Plaintiff's *medical need* for a cane at that time.  *Id*.  Subsequent acupuncture sessions were no different; they did not include any objective findings of motor weakness, any signs of muscle atrophy, any signs of lower extremity instability, or any signs of coordination or balance issues.  AR 27-28 (citing AR 675-86, 699-02, 738-40, 760-62).  At most, reports from these visits only mentioned, in passing, Plaintiff's use of a cane (and many times did not reference a cane at all).  These reports, however, do not establish Plaintiff's use of a case was "medically required" under SSR 96-9p.  *See Sou v. Saul*, 799 Fed. App'x 563, 564-65 (9th Cir. 2020) (holding that the plaintiff failed to demonstrate that a cane was medically required where evidence "did not describe the circumstances for which a cane was needed"); *Dean N. v. Saul*, 2020 WL 430962, at *2 (C.D. Cal. 2020) ("Plaintiff was required to establish both need and the specific circumstance in which he needs the cane before the ALJ could include the usage of a cane in his RFC.").  Accordingly, point-in-time treatment records referencing

Plaintiff's use of a cane do not equate to a medically-substantiated need for a cane that must be taken into account and incorporated into Plaintiff's RFC. Absent more fulsome and corroborating treatment notes, Dr. Ye-Liew's opinions about Plaintiff's need for a cane – premised upon an unadorned prescription for one – are left unsupported. *See Woods*, 32 F.4th at 791-92 ("Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant … objective medical evidence.'") (quoting 20 C.F.R. § 404.1520c(c)(1)). More is needed.

Second, as to consistency, the ALJ referenced how a September 26, 2023 MRI of Plaintiff's lumbar spine revealed only mild degenerative disc disease and no severe stenosis. AR 28 ("[T]he objective imaging and examination findings do not support the medical[ ] necessity of a cane.") (citing AR 725-26). These findings align with the ALJ's consideration of the agency doctors' opinions. The ALJ found the agency doctors' opinions to be more persuasive than Dr. Ye-Liew's opinions, further emphasizing the lack of consistency in Dr. Ye-Liew's opinions across the medical record. AR 29-30 (citing AR 66-74, 76-85). Opinions inconsistent with the objective treating record represent a valid basis to discount a medical opinion. *Woods*, 32 F.4th at 794; *see also* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion ... will be.").

With these reasons in mind, the ALJ adequately explained his findings concerning Dr. Ye-Liew's opinions. Plaintiff may believe that the ALJ did not give these opinions the weight they deserved, but the ALJ considered them against the medical record and

**REPORT AND RECOMMENDATION - 17**

decided that they lacked supportability and consistency under the regulations. Because the evidence can reasonably support the ALJ's conclusions, the Court will not substitute its judgment for that of the ALJ's, even if the Court were to have a different view. *See Richardson*, 402 U.S. at 401. Accordingly, the ALJ's evaluation of Dr. Ye-Liew's opinions is supported by substantial evidence.

Remand is not recommended on this issue.

4.  Assignment of Error No. 4: The ALJ Properly Assessed Plaintiff's Mental Impairments When Crafting Plaintiff's RFC

Plaintiff next complains that "the ALJ did not specifically pose to the [vocational expert] a hypothetical encompassing [her] severe mental limitations." Pl.'s Brief at 8 (Dkt. 13). That is incorrect. The ALJ presented the vocational expert with the following initial hypothetical:

> All right, thank you. First hypothetical assume an individual of the claimant's age, education and work experience; can perform work at the light exertion level as defined in the regulations except the individual can frequently stoop, crouch or crawl; can frequently climb stairs or ramps; can occasionally climb ladders, ropes or scaffolds; can occasionally be exposed to vibrations, unprotected heights or moving machinery parts and requires a moderate noise work environment as defined in the DOT and SCO. *Also, the individual is able to understand, remember simple instructions; make simple work-related decisions; carry out simple instructions; cannot perform work which requires a specific production rate, such as assembly line work or quota work; can occasionally deal with changes in routine work setting and can occasionally interact with supervisors, coworkers and/or the general public.* Would this individual be able to perform claimant's past relevant work?

AR 60-61 (emphasis added). Though the vocational expert responded that such a person would be unable to perform Plaintiff's past relevant work (*supra*), he confirmed that jobs existed in the national economy that such a person could perform (the same jobs

**REPORT AND RECOMMENDATION - 18**

identified by the ALJ at Step 5 of the sequential process): an office helper, mail clerk, and routing clerk.  AR 31, 61.  So, contrary to Plaintiff's critique of the ALJ's RFC analysis, the ALJ clearly presented to the vocational expert a hypothetical that incorporated Plaintiff's various mental impairments.[4]

Plaintiff additionally references her "long, continuous treatment history" with Dr. Ye-Liew, and how, as a result, Dr. Ye-Liew's medical opinions are automatically "entitled to substantial weight" and are "highly persuasive."  Pl.'s Brief at 9 (Dkt. 13). Plaintiff is again mistaken.  Blind deference to a treating source's opinions is no longer the standard under the revised regulations governing the evaluation of medical evidence. *See supra* (citing *Woods*, 32 F.4th at 792).

Dr. Ye-Liew's evaluation of Plaintiff's mental impairments falls short in any event.  In particular, Plaintiff relies on Dr. Ye-Liew's February 9, 2022 statement that "[Plaintiff] suffers from PTSD and due to her mental impairments, it is impossible for her to maintain or concentrate to fulfill tasks."  Pl.'s Brief at 9 (Dkt. 13) (citing AR 736).  But this largely misses the point.  There is no dispute that Plaintiff suffers from PTSD which has more than a minimal effect on her ability to perform work-related activities.  AR 18-20 (ALJ finding that Plaintiff's PTSD, among other medically determinable impairments, is severe).  However, this understood and severe impairment, alongside its related

---

[4]  Plaintiff highlights how the ALJ's second hypothetical to the vocational expert resulted in a response indicating that "there would be no full-time competitive jobs available."  Pl.'s Brief at 8 (Dkt. 13) (citing AR 62).  Except this separate hypothetical included a different exertion level, as well as a requirement for a cane to ambulate.  AR 62.  As discussed above, the ALJ concluded that the medical record supports Plaintiff's ability to perform light work with certain limitations, though not using a cane.  *Supra*; *see also Osenbrock*, 240 F.3d at 1164-65 (ALJ may accept or reject restrictions in a hypothetical that are not supported by substantial evidence).

**REPORT AND RECOMMENDATION - 19**

limitations, do not ipso facto establish disability in the way that Dr. Ye-Liew, and perhaps Plaintiff, imply. *See Mullins v. Astrue*, 2012 WL 71708, at *6 (C.D. Cal. 2012) ("the existence of some pain does not constitute a disability if it does not prevent Plaintiff from working"); *see also Fair v. Brown*, 885 F.2d 597, 603 (9th Cir. 1989) (the social security program is "intended to provide benefits to people who are unable to work; awarding benefits in cases of nondisabling pain would expend the class of recipients far beyond that contemplated by the statute"). Crucially, the issue is not whether Plaintiff's PTSD and associated symptoms and limitations exist (they absolutely do), but the extent to which they prevent Plaintiff from working at all. Dr. Ye-Liew's observation about the effects of Plaintiff's PTSD is not supported by objective medical evidence. Moreover, the ALJ appropriately contrasted Dr. Ye-Liew's statements about Plaintiff's inability to "maintain or concentrate to fulfill tasks" with a treatment note less than a month before, where Dr. Ye-Liew documented that Plaintiff's attention and concentration was "focused" and "linear," and she exhibited an appropriate higher integrative function. AR 30 (citing AR 518). The ALJ therefore did not err in discounting this statement.

      Remand is not recommended on this issue.

      5.    <u>Assignment of Error No. 6: The RFC is Not Vague</u>

      Plaintiff finally takes issue with certain terms the ALJ used to describe her RFC. Namely, she disputes references to "simple" instructions and work-related decisions; "occasional" changes in a routine work setting; and "occasionally" interacting with supervisors, coworkers, and the general public. Pl.'s Brief at 10 (Dkt. 13). She claims that these modifiers are undefined and therefore vague, confusing, and subject to multiple

interpretations. *Id.* "Simple" and "occasionally" are terms of art under the Social Security regulations. "Simple" generally coincides with reasoning levels; "occasionally" means "very little up to one-third of the time." *Compare* SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985), *with* SSR 83-10, 1983 WL 31251, at *7 (Jan. 1, 1983), *with* SSR 83-14, 1983 WL 31254, at *2 (Jan. 1, 1983). These terms are very common in Social Security parlance – especially in the context of vocational expert hypotheticals and RFCs – and are not impermissibly vague. *See, e.g.*, *McGhee v. Astrue*, 2010 WL 1946270, at *3 (E.D. Va. 2010) ("And contrary to McGhee's assertions, adding the word 'simple' to that term of art does not create a vague phrase incapable of interpretation or elaboration. Rather, it is a phrase that has been permissibly and repeatedly used in this context.").

Remand is not recommended on this issue.

## IV.  CONCLUSION

The ALJ, as fact-finder, must weigh the evidence, draw inferences from facts, and determine credibility. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its interpretation for that of the ALJ. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). The ALJ has provided reasonable and rational support for his well-formed conclusions, even if such evidence is susceptible to a different interpretation. Accordingly, the ALJ's decisions as to Plaintiff's disability claim were based upon proper legal standards and supported by substantial evidence. The Commissioner's decision should be affirmed and Plaintiff's Complaint for Review should be denied.

## V.  <u>RECOMMENDATION</u>

Based on the foregoing, IT IS HEREBY RECOMMENDED that the decision of the Commissioner be AFFIRMED, that Plaintiff's Complaint for Review of a Social Security Disability or Supplemental Security Income Decision (Dkt. 1) be DENIED, and this action be DISMISSED in its entirety, with prejudice.

**A party objecting to this recommended disposition must serve and file specific, written objections, not to exceed twenty (20) pages <u>on or before September 2, 2025</u>.  The other party may serve and file a response, not to exceed twenty (20) pages, to another party's objection <u>on or before September 9, 2025</u>.**

DATED:  August 21, 2025



_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge

**REPORT AND RECOMMENDATION - 22**